McHALE v. FIDELITY & CASUALTY CO.

(Supreme Court, Appellate Division, First Department. February 19, 1897.)

NEGLIGENCE—SUFFICIENCY OF EVIDENCE.

An elevator inspector, after requesting the engineer, who had assisted at previous inspections, to remove the cover from the sheaves at the bottom of the shaft, ordered the elevator operator, in the engineer's hearing, to go up slowly, and (as the operator alone testified) to come down again, and then went into the engine room to inspect the driving belt, which could only be done while the machinery was in motion. The engineer, knowing that the inspector had gone, went into the shaft to remove the cover from the sheaves, and was injured by the descending car, which could not be seen from the engine room. *Held*, that the inspector was not negligent.

Appeal from trial term, New York county.

Action by John McHale against the Fidelity & Casualty Company. From a judgment entered on a verdict for plaintiff, and from an order denying a motion for new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

Perry D. Trafford, for appellant.
C. M. Earle, for respondent.

VAN BRUNT, P. J. This action was brought to recover damages sustained by the plaintiff, an engineer employed in the building No. 237 Mercer street, in the city of New York, and which he claims were occasioned by the negligence of an elevator inspector employed by the defendant. There is only one point upon which there is any conflict of evidence in the case. In the course of its business, the defendant was in the habit of inspecting elevators; and, upon the day of the accident, one of its inspectors visited the premises in question, for the purpose of inspecting the elevator,

which had been done repeatedly before. The plaintiff was an engineer, and for some years prior to the accident had been in charge of the elevator machinery in the building, and was entirely familiar with its operation and management, and had been present at many inspections. The person who ran the elevator had been employed at that work for about a year prior to the accident, and continued in such employment until the time of the trial. The building was five stories high, and the elevator was a passenger elevator running to the top of the building. It was worked by three cables winding on a drum, turned by an engine. As the drum was wound up, the car was hoisted; and, as it unwound, the car was lowered. Opposite the elevator shaft, and separated from it by a brick partition, was the engine room. One in the engine room could see the hoisting cable, but could not see the elevator drum nor the position of the elevator car in the shaft. At the bottom of the shaft, near the front, and just below the level of the floor, was a wooden box covering some sheaves. Part of the duty of the inspector was to inspect these sheaves and also the driving belt. In order to make the proper inspection of the driving belt, the machinery had to be in motion, and it had been customary to take off this cover of the sheaves for the purposes of inspection. After the inspector had proceeded for some time with his inspection, he was desirous of examining the driving belt, and had a candle in his hand for that purpose. The engineer, the attendant of the elevator (the elevator apparently being at the bottom of the shaft), and the inspector were standing at the shaft. The plaintiff states that he was requested by the inspector to remove the box. Thereupon, for the purpose of inspecting the belt, the inspector gave an order to the elevator attendant to go up slowly, as he and the plaintiff testified, but the elevator attendant says that the order was to go up slowly, and to come down slowly. The inspector then went into the engine room, for the purpose of examining the belt while in motion, and the plaintiff went into the elevator shaft, and commenced to take off the cover from the sheaves. He was stooping down for that purpose when the elevator came down upon him, and, upon giving a cry, it was heard by the inspector, who rushed out from the engine room, and caused the elevator to rise, and pulled out the plaintiff, who had been considerably injured. This action was brought for the purpose of recovering damages for such injuries. Upon the trial a verdict was rendered for the plaintiff, and a motion was made for a new trial upon the judge's minutes, which was denied. From the judgment and order thereupon entered, this appeal is taken.

The question involved upon this appeal is as to whether there was any evidence of negligence upon the part of the defendant's inspector. As has already been stated, there is substantially no dispute in regard to what happened, except in the contradiction arising between the plaintiff and the inspector, on the one hand, and the elevator attendant, on the other, as to the order given at the time the elevator was moved. The plaintiff was standing beside the inspector, and the inspector had his candle ready to ex-

amine the belt. This inspection was to be conducted in the engine room, from which the elevator shaft could not be seen. That being the situation, a conversation took place between the plaintiff and the inspector as to taking off the cover from the sheaves, so that they could be examined. The inspector says, and the plaintiff corroborates him, that he gave the order to the elevator attendant to go up slowly, and then started into the engine room, for the purpose of examining the belt, which could only be done while the elevator was in motion, of which the plaintiff was well aware. If that had been the condition, it is plain that there could be no possible ground for claiming negligence upon the part of the inspector. The elevator attendant, however, swears that his order was to go up slowly, and to come down slowly, and that it was in obedience to that order that he had gone up the five stories in the building, and come down again, in the short space of time shown by the evidence. It appears, as the inspector says, that it was only half a minute before he heard the cry of the plaintiff, and found the elevator in the bottom of the shaft. The plaintiff was perfectly well aware that the inspector had had the elevator moved for the purpose of examining the belt, and that he started into the engine room with that object. He was immediately alongside of the inspector when the order was given to move the elevator. The inspector, of course, under these circumstances, had a right to assume that the plaintiff was acquainted with the order as given; and, if there was anything in that order which would make it dangerous for him to go into the shaft to take off the cover, the inspector was justified in supposing that he was fully acquainted with that risk. There is no pretense but that the plaintiff heard the order to go up. There is no pretense that the order to come down, if given at all, was given at any other time than at the instant the order to go up was given.

It is claimed that, in view of this order to come down, it was the duty of the inspector to remain by the shaft, and to warn the plaintiff when the elevator came down. But the evidence shows conclusively that the plaintiff went in, knowing that the inspector would not give him any such warning, and would not remain there while he was taking off this box. He knew that the elevator was being moved for the purpose of inspecting the belt. He knew that the inspector was going into the engine room for that purpose, and that from the engine room he could not see the position of the elevator in the shaft, although, perhaps, he might see some of its cables. He went of his own volition into the shaft, to take off this box, and paid no attention whatever to the position of the elevator, although the drum was within a short distance of him, in plain sight, from which he could tell the position of the elevator at any time. Under these circumstances, it is difficult to see upon what ground negligence of the inspector can be predicated.

Some claim is made that upon previous occasions there had been two inspectors, and that one or the other of them had taken the cover off this box. But it also appears that the plaintiff had done this upon several other occasions, and that it was not a uniform

practice for two inspectors to attend. The plaintiff was perfectly familiar with the method of inspection and the working of the elevator, and, as already stated, had taken off this box many times before, for the purpose of inspection. He was therefore conversant with the risk, and there does not seem, in any aspect of the case, to have been any evidence of negligence on the part of the inspector. There might perhaps have been some foundation for such a claim if the plaintiff had had any reason to suppose that the inspector was to remain there to give him warning of the approach of the elevator. But, according to his own testimony and that of the inspector, he had no reason to suppose that that elevator would come down; and it is evident that neither the plaintiff, who heard the order, nor the inspector, who gave it, supposed that it would. As already stated, the plaintiff knew that the inspector was not going to remain, but that he was going into the engine room; and, knowing these things, he took the risk of going into the shaft, and having the elevator come down upon him. We are of the opinion, therefore, that there was no evidence whatever showing the negligence of the inspector, and that the complaint should have been dismissed.

Judgment and order reversed, and a new trial granted, with costs to appellant to abide event. All concur.